UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GERALD PEGUESE,

        Plaintiff,

                                       Case Number 15-10475

v.                                     Honorable David M. Lawson

PNC BANK, N.A., and
DOMINIC GOYETTE,

        Defendants.

_____/

## OPINION AND ORDER DISMISSING CASE FOR WANT OF JURISDICTION

Plaintiff Gerald Peguese filed a complaint in this Court against defendant PNC Bank alleging state law causes of action and invoking this Court's diversity jurisdiction. After the Bank filed a pair of motions to dismiss, Peguese filed an amended complaint "as a matter of course," Fed. R. Civ. P. 15(a)(1)(B), within the time allowed by Rule 15(a)(1), adding a non-diverse defendant. The resulting jurisdictional issues were brought to the parties' attention by an order to show cause why the case should not be dismissed. Peguese's response to the order acknowledges that the added party destroys diversity, and he suggests that the Court should dismiss the case without prejudice and allow him to take his case to state court. The Bank says not so fast. It believes that when adding a party by amendment, a plaintiff first must obtain leave of court by motion under Rule 21; the non-diverse party was not joined properly; and, invoking the doctrine of fraudulent joinder, that party should be dropped so that diversity would be complete. The Bank then asks the Court to acknowledge its subject matter jurisdiction and to rule on its motion(s) to dismiss.

The issues presented are these: (1) When a plaintiff wants to amend his complaint to add a party within the 21-day window established by Rule 15(a)(1), may he do so as a matter of course,

or must he file a motion under Rule 21?; (2) If the added defendant destroys subject matter jurisdiction, should the Court drop the party "on just terms" under Rule 21?  The Court believes that Rule 15 governs the amendment, and therefore the amended complaint was filed properly.  The Court also finds no good reason to drop the added defendant, which leads inevitably to the loss of subject matter jurisdiction and a dismissal of the case without prejudice.

## I.

According to the amended complaint, Gerald Peguese, a Michigan citizen and a licensed mechanical and electrical engineer, had been certified as a minority mechanical contractor since 1999 and had been a minority vendor in the automotive industry in Michigan since 2001.  Peguese founded E.L. Mechanical, Inc. ("ELM"), a minority contracting business.  Defendant PNC Bank is incorporated in the State of Delaware with its principal place of business in Pennsylvania.  Defendant Dominic Goyette, a Michigan citizen, had been a principal of Goyette Mechanical Company, Inc. ("Goyette Mechancial"), a mechanical contracting firm located in Flint, Michigan, for at least fifteen years.  Dominic Goyette "controls" Goyette Mechanical.

In 2008, Goyette Mechanical partnered with ELM to obtain a share of the mechanical work in the automotive industry in the Detroit area.  Under the partnership, Dominic Goyette agreed to mentor Peguese and provide assistance with payroll, bonding, and banking in exchange for Peguese seeking opportunities for minority contracting work in the automotive industry.  Goyette also advised Peguese that he had the means personally to provide capital for the work that ELM performed.

In 2011, the Bank made a loan to Goyette Mechanical, ELM, and Goyette-West (another Goyette family entity) based on its pre-existing relationship with Dominic Goyette; Dominic Goyette was a guarantor on the loan.  The Bank assigned Fred Mitchell as the loan officer.  The plaintiff

alleges that Fred Mitchell forged ELM's signature on the loan documents with the knowledge of Dominic Goyette and the Bank and only met with Gerald Peguese once or twice during the four or five years that ELM and Goyette Mechanical worked together. The plaintiff further alleges that funds were deposited into a bank account that Gerald Peguese and ELM could not access, neither Peguese nor ELM had check writing authority for the funds, the Bank never provided Peguese with a copy of the loan documents, and the content of the loan documents were never explained to Peguese.

The plaintiff alleges that Dominic Goyette controlled Peguese and the operations of ELM, including placing employees of Goyette Mechanical on the ELM payroll. The plaintiff alleges that Dominic Goyette threatened to withdraw his personal guaranty on the loan when Peguese asked for a raise, questioned the rent charged for ELM's office and warehouse, asked to select his own project manager and controller, and questioned Goyette Mechanical's management fees and bonuses. Although the Bank was made aware of these problems, the plaintiff alleges that the Bank never took steps to prevent Dominic Goyette from exercising improper control over ELM.

The plaintiff alleges that Dominic Goyette told him that the Bank wanted Goyette Mechanical to "take[ ]over" ELM in October 2012. Although Peguese requested his own line of credit, the Bank refused. The plaintiff says that Goyette Mechanical charged excessive rent, management, and legal fees, and misappropriated ELM's funds. The Bank, Peguese alleges, was aware of those fees, limited communication to Goyette Mechanical, and facilitated Goyette Mechanical's control over ELM by requiring ELM to participate in a cash collateral agreement with Goyette Mechanical.

The plaintiff alleges that Goyette Mechanical used accounts receivable on jobs it performed outside of its partnership with ELM. Peguese alleges that he requested, but was refused, documents

-3-

showing what portion of the line of credit Goyette Mechanical owed. Moreover, the plaintiff alleges that the Bank failed to provide him and ELM with information in its possession relating to the manner in which Goyette Mechanical used the loan.

The plaintiff alleges that it requested a meeting with Goyette Mechanical personnel in July 2013 to state that ELM's minority certification was at risk because of Goyette Mechanical's control over ELM. The plaintiff also alleges that his attorney communicated the same concern to the Bank's representative and stated that it was essential that ELM have a separate line of credit in order to maintain ELM's minority status. Rather than providing a separate line of credit, the plaintiff alleges that Fred Mitchell falsely represented to the Michigan Minority Supplier Development Counsel that ELM had an independent line of credit.

The plaintiff alleges that the relationship between Goyette Mechanical and ELM deteriorated in the fall of 2013 and early 2014. The plaintiff contends that Goyette Mechanical and the Bank took the position that ELM was jointly liable with Goyette Mechanical for loan repayments in excess of five million dollars, but did not reveal how ELM's borrowing base could possibly justify that amount. As a result, the plaintiff alleges that ELM took steps to secure control of certain funds owed to ELM rather than deposit the funds into the PNC account.

In January 2014, Peguese terminated the partnership between ELM and Goyette Mechanical. The plaintiff alleges that the maximum amount of debt that ELM could have owed to the Bank in January 2014 was $1.7 million and the current debt is less than $15,000. The plaintiff alleges that Goyette Mechanical and Dominic Goyette manipulated the line of credit by using ineligible ELM invoices as part of the borrowing base.

-4-

The plaintiff alleges that Dominic Goyette intentionally interfered with ELM's contractual relations with Chrysler and Federated Insurance, its insurance carrier, by filing an unauthorized insurance claim in ELM's name in January and February 2014 for work done at the Jefferson North Assembly Plant. The plaintiff avers that Dominic Goyette filed the claim to obtain funds to pay down the PNC loan. However, Peguese intervened and withdrew the claim before further damage to its reputation and the reputation of Gerald Peguese could be done.

The plaintiff also alleges that Dominic Goyette and Goyette Mechanical used the plaintiff's electronic signature to obtain $115,000 fraudulently from ELM's Charter One bank account to pay down the PNC loan. Additionally, the plaintiff alleges that Dominic Goyette and Goyette Mechanical misappropriated $83,314.09 in the form of a check from O'Brien Construction payable to ELM.

In January 2014, Dominic Goyette and Goyette Mechanical "cut off" ELM from its COINS Accounting System, which made it impossible for ELM to conduct business with its suppliers. Moreover, the plaintiff avers that Dominic Goyette corresponded with ELM's major customer, Chrysler, on January 21, 2014. Goyette told Chrysler that the approximately $3 million that it owed ELM should be paid to the PNC account because Goyette Mechanical feared ELM would not pay its suppliers, subcontractors, vendors, and the Bank. The plaintiff alleges that this communication constitutes an intentional interference with ELM's and Peguese's contractual relationship with Chrysler.

Peguese contends that the Bank has demanded $5 million from ELM. He also alleges that the Bank provided Goyette Mechanical with information about the loan and line of credit without providing the same information to ELM. Although a receiver has been appointed, Peguese alleges

that the receiver has taken no action to seize the assets of Goyette Mechanical or Goyette-West. Peguese alleges that the receiver has not proceeded against those entities because the Bank has a relationship with the receiver and has used its services on numerous occasions.

On February 27, 2015, the Bank filed a motion to dismiss, followed by a second motion to dismiss or for summary judgment on March 18, 2015. The plaintiff filed a response on March 19, 2015 and also filed an amended complaint that added Dominic Goyette as a defendant. Thereafter, the Court ordered the parties to show cause why the case should not be dismissed for lack of subject matter jurisdiction. The plaintiff filed a response to the Court's order to show cause on March 30, 2015, conceding that the Court no longer had subject matter jurisdiction because the new defendant destroyed complete diversity and the amended complaint did not contain any federal claims. The Bank responded on April 6, 2015 and asked the Court to adjudicate its motions on the merits because the plaintiff did not add Dominic Goyette properly as a party, adding Dominic Goyette as a party constitutes fraudulent joinder, and joining Dominic Goyette as a party is not permitted under Rule 20 of the Federal Rules of Civil Procedure.

## II.

## A.

Federal Rule of Civil Procedure 15 says that "[a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). All here agree that the plaintiff filed his amended complaint within the 21-day window. But because the amended complaint added a party, the Bank insists that Rule 21 governs. That rule states: "On

motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Fed. R. Civ. P. 21.  The Bank reasons that Rule 21 addresses adding and dropping parties, and its requirement that a motion be filed to accomplish that task trumps Rule 15(a)(1)'s permissive language.

The Sixth Circuit has not determined in a published decision "whether Rule 21 or Rule 15 controls the amendment of a pleading where the amendment seeks to add parties to the action." *Broyles v. Corr. Med. Servs., Inc.*, No. 08-1638, 2009 WL 3154241, at *3 (6th Cir. 2009).  "The significance of this issue is that a court order is required for action under Rule 21 whereas an amendment made as of right occurs without the court's involvement."  1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 21 (2015).

In *Broyles*, the Sixth Circuit held that the district court abused its discretion by striking the plaintiff's amended complaint filed before the defendant submitted a responsive pleading, which added additional parties, rather than permitting amendment of his complaint without leave of the court.  The court observed that Rule 15(a) gives plaintiffs an "absolute right" to amend a complaint before a responsive pleading is served even if the amendment would be futile.  *Broyles*, 2009 WL 3154241, at *3-4.

Nevertheless, the Bank contends that *Broyles* does not govern for three reasons.  *First*, it is unpublished, and therefore not binding on this Court.  True enough, but unpublished decisions may be considered for their "persuasive value."  *United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009); *see also United States v. Sanford*, 476 F.3d 391, 396 (6th Cir. 2007)  observing that "an unpublished decision . . . is not precedentially binding under the doctrine of *stare decisis*, but is considered . . . for its persuasive value only").  Moreover, "[n]on-binding decisions can have great utility when

-7-

binding decisions on the contested issues are scarce, and where the unpublished decision addresses exactly, or almost exactly the same issue as the court confronts." *Smith v. Astrue*, 639 F. Supp. 2d 836, 842 (W.D. Mich. 2009) (internal citations omitted). "And even where binding decisions clearly set forth the applicable legal standard, a non-binding decision may provide a factual scenario more similar to the facts of the case at bar than any binding decisions." *Id.* at 843 (collecting cases). Although it may not govern, *Broyles* is persuasive because it addresses one of the same issues as in this case in a sensible manner.

*Second*, the Bank argues that the policy of liberally allowing pleading amendments is more geared toward curing technical flaws, not for changing courts and starting a new case. But that is not necessarily so; Rule 15's purpose is much broader than the Bank would acknowledge. Amendments under Rule 15(a) can be made "to cure a defective pleading, to correct insufficiently stated claims, to amplify a previously alleged claim, to change the nature or theory of the case, to state additional claims, to increase the amount of damages sought, to elect different remedies, or to add, substitute or drop parties to the action." *Wolfson v. Lewis*, 168 F.R.D. 530, 533 (E.D. Pa. 1996) (citing L. Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure: Civil 2d § 1474 (1990)). The plaintiff, as master of his complaint, can remaster his claims after a false start if he chooses, as long as he does it promptly. And since the plaintiff is the one who chose the forum, there is nothing in Rule 15 that says that he cannot change his mind on that score, either.

*Third*, the defendant argues that *Broyles* is distinguishable on its facts. The defendant is correct that *Broyles* involved an unskilled *pro se* prisoner who wanted to amend his original complaint to add additional defendants and claims. By contrast, the plaintiff in this case is a sophisticated party represented by counsel. Nevertheless, the plain language of Rule 15(a)(1) grants

-8-

a plaintiff a right to amend his complaint once before a responsive pleading is served regardless of the plaintiff's status. There is no good reason to limit the holding in *Broyles* to the specific facts in that case.

The question remains, however, whether Rule 21's motion requirement governs Rule 15(a)(1)'s liberal amendment policy when it comes to adding parties. There is a potential conflict between Rule 15(a)(1) and Rule 21 because Rule 21 requires a plaintiff to seek permission before adding or dropping a defendant. *See* 27A Fed. Proc., L. Ed. § 62:258 ("While the subject of the amendment of pleadings is dealt with specifically in the provision of the Federal Rules of Civil Procedure governing amended and supplemental pleadings, other provisions of the Federal Rules can be used in certain circumstances to accomplish the same purpose as an amendment, and conflict may occur between the amended pleading rule and those other provisions."). And a court in this district has held, without the benefit of *Broyles*'s guidance, that "[a]n amendment to a complaint which adds or drops a party requires an order of the Court . . . regardless of whether it precedes or follows the first responsive pleading of any defendant." *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Am. Fed'n of Labor & Cong. of Indus. Organizations*, 32 F.R.D. 441, 442 (E.D. Mich. 1963). That court reasoned:

> Rule 15(a) . . . refers, in general terms, to the broad subject of changes in the parties to the action, by adding or dropping some of such parties. Any conflict or ambiguity which results from a comparison of the two rules must be resolved in favor of the specific and against the general. Thus, when a proposed amendment to a complaint seeks to effect a change in the parties to the action, Rule 21 . . . controls and, to that extent, limits Rule 15(a).

*Id.* at 443.

-9-

This Court agrees with that approach: "To determine the meaning of a Federal Rule of Civil Procedure, courts apply rules of statutory interpretation." *In re Rhodes Companies, LLC*, 475 B.R. 733, 738 (D. Nev. 2012) (citing *Delta Air Lines, Inc. v. August*, 450 U.S. 346, 347-62 (1981)). And it is true that an "ancient interpretive principle that the specific governs the general." *Nitro-Lift Technologies, L.L.C. v. Howard*, --- U.S. ---, 133 S. Ct. 500, 504 (2012). But it is far from clear that Rule 21 is the more specific rule compared to Rule 15.

> It might be argued that Rule 21 is the general provision since it deals in broad terms with dropping and adding parties by motion, and Rule 15(a) is a more specific provision because it sets forth a particular means by which a party may attempt to drop or add parties — by an amendment to the pleadings. Viewed from this perspective, any attempt to change parties by amendment before the time to amend as of course has expired should be governed by Rule 15(a)(1) and may be made without leave of court.

6 Fed. Prac. & Proc. Civ. § 1479 (3d ed.).

Courts "are split on whether Rule 21 has preference over Rule 15(a)," *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944-SC, 2014 WL 1305040, at *4 (N.D. Cal. Mar. 28, 2014); *see also* 1 Steven S. Gensler, *Federal Rules of Civil Procedure, Rules and Commentary*, Rule 21 (2015) (same), although there is a clear trend favoring the predominance of Rule 15(a)(1). The Seventh Circuit has held that Rule 21 governs. *Williams v. United States Postal Serv.*, 873 F. 2d 1069, 1072 n.1 (7th Cir. 1989) (holding that plaintiff cannot add new defendant to a complaint amended as a matter of course). But the Second, Fourth, Fifth, and Tenth Circuits have held that Rule 15(a) controls. *Galustian v. Peter*, 591 F.3d 724, 730 (4th Cir. 2010) ("While some courts have concluded that Rule 15(a) does not apply to amendments seeking to add parties, most courts, including this one, have concluded otherwise.") (citations omitted); *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 31 F.3d 1015, 1018 (10th Cir. 1994) ("Rule 15(a) governs the addition of

-10-

a party"); *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir. 1983) (finding that district court abused its discretion by refusing to allow plaintiff to add two individuals as defendants under Rule 15(a)(1)); *McClellan v. Mississippi Power & Light Co.*, 526 F.2d 870, 872-73 (5th Cir. 1976) (holding that Rule 15 takes precedence if a party attempts to drop or add parties by an amended pleading filed before a responsive pleading is served), *vacated in part on other grounds*, 545 F.2d 919 (5th Cir. 1977).

This Court agrees with the majority of jurisdictions that Rule 15(a)(1) prevails over Rule 21 when a plaintiff amends his complaint as a matter of course within the time allowed and adds a party. Rule 15's command is clear: a plaintiff "*may* amend *its* pleading once as a matter of course." (Emphasis added.). The choice is the plaintiff's, not the Court's, and certainly not the defendant's. The more specific terms of Rule 15 addressing amendments govern over the more general provisions of Rule 21. That construction respects the reasoning of *Broyles v. Correctional Medical Services, Inc.*, and is more consistent with Sixth Circuit's precedent holding that Rule 15(a)(1) provides plaintiffs with "'an absolute right to amend their complaint one time before a responsive pleading is served.'" *In re Alfes*, 709 F.3d 631, 639 (6th Cir. 2013) (quoting *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 420 (6th Cir. 2000)).

The amended complaint in this case, therefore, was filed properly.

## B.

Joining the non-diverse party in the amended complaint, however, does not mean that he will stay in the case. As noted earlier, Rule 21 allows the Court, on the motion of a party, or "on its own," to "add or drop a party" "on just terms." Although the Court may not drop an indispensable party, *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 545-46 (6th Cir. 1994), "it

is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time, even after judgment has been rendered," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832 (1989). Dominic Goyette is not an indispensable party, since complete relief could be afforded to the plaintiff against the Bank in his absence, and he does not claim an interest in the litigation. *See* Fed. R. Civ. P. 19(a). Therefore, the Court has the discretion to drop him from the case. *Sutherland v. Mich. Dep't of Treas.*, 344 F.3d 603, 612 (6th Cir. 2003) (holding that a district court's "decision to drop a . . . party pursuant to Rule 21 [is reviewed for] for abuse of discretion").

That concept is hardly novel, especially when adding a party destroys subject matter jurisdiction. *See, e.g.*, 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.") (addressing removed cases). That the plaintiff added the party through an amendment by right does not change the picture. *Mayes v. Rapoport*, 198 F.3d 457, 462, n.11 (4th Cir. 1999) (acknowledging that "a district court has the authority to reject a post-removal joinder that implicates 28 U.S.C. § 1447(e), even if the joinder was without leave of court").

Section 1447(e) does not apply directly here, though, because the case was filed in this Court as an original action; it was not removed from state court. The cases applying that statute are useful, however, because they discuss factors that inform the court's exercise of discretion to allow or refuse the addition of a jurisdiction-destroying party. Five factors generally are referenced, *see J. Lewis Cooper Co. v. Diageo N. Am., Inc.*, 370 F. Supp. 2d 613, 618 (E.D. Mich. 2005), although one plays no role in the context of this case: "the diverse defendant's interest in selecting a federal forum."

-12-

*Ibid.* (citing *Wells v. Certainteed Corp.*, 950 F. Supp. 200, 201 (E.D. Mich.1997)).  Because the case was not removed, the defendant had no say in selecting the federal forum, and therefore the defendant's interest in this forum could not have informed the plaintiff's initial choice, which he apparently is willing to forego.

Other factors to consider include: "(1) the extent to which the purpose of the amendment is to defeat jurisdiction; (2) whether the plaintiff was dilatory in seeking the amendment; (3) whether the plaintiff will be injured significantly if the amendment is not allowed; and (4) any other factors bearing on the equities."  *Ibid.* (quoting *Siedlik v. Stanley Works, Inc.*, 205 F. Supp. 2d 762, 765 (E.D. Mich. 2002)).  "These factors, the Court believes, are intended to answer the ultimate question whether the primary purpose of the proposed joinder is to oust the case from the federal forum." *Ibid.*  It is difficult to conclude that the plaintiff's purpose in adding Dominic Goyette to the case was to defeat federal jurisdiction, inasmuch as he chose the federal forum in the first place.  He promptly filed the amended complaint.  And his interest in pursuing his conspiracy claims against both the alleged conspirators in the same proceeding makes economic and efficient sense.

The Bank insists that it has a right to a ruling on its motions to dismiss, and that is true.  But retaining the added defendant will have the effect only of terminating the lawsuit in this Court for want of subject matter jurisdiction.  If the plaintiff chooses to refile the case in state court, the Bank will have its opportunity to litigate the merits of the claims against it in that forum.  The Bank's right to pursue its dismissal motions in this Court is not absolute.  "[T]he plaintiffs also have a right to fashion their lawsuit, select their causes of action, and advance theories against the parties of their choosing."  *Ibid.*

-13-

C.

Because Dominic Goyette will remain as a defendant in the case, there is no complete diversity between the plaintiff and the defendants. A federal court has jurisdiction under 28 U.S.C. § 1332 only if there is "complete diversity between all plaintiffs and all defendants." *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citing *Strawbridge v. Curtiss*, 3 Cranch 267 (1806)). Complete diversity exists only when "no plaintiff and no defendant are citizens of the same state." *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (citing *United States Fidelity & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992)); *see also* 28 U.S.C. § 1332(a)(1).

Because complete diversity no longer exists, the case must be dismissed without prejudice.

III.

The amendment to the complaint was filed properly. The Court does not believe that the added, diversity destroying defendant should be dropped from the case in this Court. The Court no longer has subject matter jurisdiction over this case, and it must be dismissed.

Accordingly, it is **ORDERED** that the case is **DISMISSED WITHOUT PREJUDICE**.

It is further **ORDERED** that the motions by defendant PNC Bank, N.A. to dismiss and for summary judgment [dkt. #4, 9] are **DISMISSED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  May 6, 2015

-14-

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 6, 2015.

s/Susan Pinkowski
SUSAN PINKOWSKI